## BANGOR SAV. BANK *v.* CITY OF STILLWATER.

*(Circuit Court, D. Minnesota, Third Division. July 20, 1891.)*

MUNICIPAL CORPORATIONS—POWER TO ISSUE NEGOTIABLE CERTIFICATES.
In the absence of any special statutory authority, a city has no right to issue certificates of indebtedness in negotiable form, even in payment for property which it had authority to buy.

At Law.

F. H. Lemon & Co. contracted with the city of Stillwater, in December, 1887, to vest title in the city to two parcels of land, which were to be used by the city for the purposes of a public street; also to widen Main street for a certain distance, so that it should be 50 feet in width; and to do the necessary excavation and filling to make the strip which was added for the purpose of widening the highway conform to the established grade of Main street. They also agreed to obtain certain sewer privileges for the city, and to secure the relocation of certain railroad tracks. For the land so to be acquired, and the services to be rendered, the city, on its part, agreed to dismiss certain condemnation proceedings that appear to have been then pending; also to vacate and surrender all of its rights to certain parts of Main, Laurel, Cherry, and Linden streets; and,

in addition, and on completion of the contract by Lemon & Co., to pay them $21,250 in three certificates of indebtedness, to become due, respectively, July 1, 1889, July 1, 1890, and July 1, 1891. Subsequently, in October, 1888, before the contract was fully performed by Lemon & Co., the city council authorized the certificates of indebtedness to be executed and delivered to the Bangor Savings Bank, to whom Lemon & Co. had contracted to sell the same. They were executed and delivered in the following form:

"CERTIFICATE OF INDEBTEDNESS.

"$7,500.                                    STILLWATER, MINN., July 1, 1888.

"Know all men by these presents, that in consideration of the performance by F. H. Lemon & Co. of a certain contract between them and the city of Stillwater, for the purchase of certain rights of way for streets and sewers, and the grading of certain streets, dated December 21st, A. D. 1887, said city of Stillwater, at the request of F. H. Lemon & Co., hereby acknowledges itself to be indebted to the Bangor Savings Bank, of Bangor, in the state of Maine, or order, in the sum of seven thousand five hundred dollars, ($7,500.00,) with interest thereon at the rate of 6% per annum from the date hereof, payable semi-annually on the 1st days of January and July of each year, which said sum said city hereby undertakes and promises to pay to the said Bangor Savings Bank or order on the 1st day of July, A. D. 1890, at the 5th Avenue Bank, of New York city, together with semi-annual interest thereon, as aforesaid. This certificate is made and delivered in accordance with a resolution of the city council of said city of Stillwater, passed on the 27th day of October, A. D. 1888, and duly approved by the mayor, and published in the official paper of said city on the 29th day of October, A. D. 1888. In witness whereof there is hereunto affixed the corporate seal of the city of Stillwater, and the signature of its mayor, attested by the signature of its clerk, by and with the authority of its city council, on this 29th day of October, A. D. 1888.

"G. M. SEYMOUR, Mayor of the City of Stillwater.

Attest: "E. A. HOPKINS, Jr., Clerk of the City of Stillwater."
[Corporate Seal of the City of Stillwater.]

By resolution of the city council authorizing the delivery of the certificates, it was provided, in substance, that they should be placed in the possession of F. M. Prince, who was authorized to deliver them to the bank, and receive the proceeds, and hold the same, subject to the further order of the city council. At a later date, (November 9, 1888,) after Lemon & Co. had fully completed their contract, Prince was authorized by the city council to pay the proceeds of the certificates then in his hands to Lemon & Co., which he accordingly did. The city now contests payment of the so-called "certificates" on the ground that it had no authority to issue them.

*Sanders & Bowers* and *O. Morris*, for plaintiff.

*Fayette Marsh*, for defendant.

THAYER, J., (*after stating the facts as above.*) We think it clear that the city of Stillwater had the right to contract with Lemon & Co. for the acquisition of the strips of land in question, the sewer privileges, the widening of Main street, the vacation of certain streets, and the relocation of railroad tracks. It had such right, we think, under power conferred

upon the city council by various provisions of the city charter "to open, establish, vacate, and widen streets, to construct, maintain, and extend sewers, and to condemn or purchase the lands necessary to be used for street and sewer purposes." *Vide* City Charter, c. 8, § 11; Id. c. 9, §§ 1, 2; Id. c. 4, § 16. These powers were sufficient to authorize the city council to contract with Lemon & Co. to procure the lands in question, and to render the services which they undertook to render for and in behalf of the city. But it is a different question whether the city had authority to pay for such services in the manner proposed; that is to say, by the issue of certificates of indebtedness, payable to order, and running one, two, and three years. Plaintiff's attorneys strenuously insist, and in that we agree with them, that the so-called "Certificates of Indebtedness" are in reality negotiable bonds or notes, which, under the law-merchant, may be transferred by indorsement from hand to hand, so as to cut off equities of defense. In a recent case, which contains an elaborate review of previous decisions on the same subject, the doctrine was restated, that municipal corporations have no power to utter commercial paper, unless it is expressly conferred upon them by law, or is clearly implied from some other power expressly given. It was further held that no implication arises that a municipality may make commercial paper, and put the same on the market, from the fact that it is expressly authorized to borrow money. "To borrow money," say the court, "and to give a bond or obligation therefor which may circulate in the market as a negotiable security, freed from any equities that may be set up by the maker of it, are, in their nature and in their legal effect, essentially different transactions." *Merrill* v. *Town of Monticello*, 138 U. S. 673, 11 Sup. Ct. Rep. 441, 448. See, also, *Claiborne Co.* v. *Brooks*, 111 U. S. 400, 406, 4 Sup. Ct. Rep. 489; *Police Jury* v. *Britton*, 15 Wall. 566, and *Young* v. *Clarendon Tp.*, 132 U. S. 340, 10 Sup. Ct. Rep. 107. In the present instance it appears that the so-called "certificate" or "bond" remains in the hands of the original payee, the Bangor Savings Bank; it has not been negotiated; and it contains on its face a recital that it was issued in consideration of the "performance by F. H. Lemon & Co. of a certain contract, * * * dated December 21, 1887," which is notice to the holder of the provisions of that contract. No question of estoppel, or touching the superior rights of a transferee for value, can arise in this case. The point to be determined is simply whether the city of Stillwater had any authority, under its charter, to issue negotiable bonds to Lemon & Co. for the land to be procured and the services to be rendered, and this question, we think, must be answered in the negative. By section 3*a* of chapter 3 of its charter "the committee on finances of the city council, * * * upon order of the council, may, from time to time, borrow for and in behalf of said city such sums of money as may be necessary for temporary purposes, and to anticipate the current revenue only." It is obvious, we think, that the issue of bonds to Lemon & Co., under the circumstances and for the purpose explained, cannot be supported under this clause. Short, temporary loans, in anticipation of, and to be paid out of the current revenue for the year,

is all that this section contemplates. Again, by sections 26, 26a, and 26b of chapter 5 the city was authorized to issue and sell bonds, and put the avails thereof in the city treasury, to create what is termed a "Permanent Improvement Fund." Whether the city had already issued all the bonds authorized to create the permanent improvement fund does not appear, but that is immaterial, as, in our view, it could not issue the so-called "certificates" under the sections of the charter last referred to, its duty having been, in our judgment, to pay Lemon & Co. in money out of the "permanent improvement fund," as the charter seems to contemplate, instead of issuing to them negotiable bonds. The only other authority to be found in the city charter to issue negotiable paper is contained in section 25 of chapter 5. This section authorized an issue of bonds to meet other maturing bonds of the city, when there was a deficiency in the "sinking fund;" but it also contains the following important prohibition in the concluding paragraph of the section, to wit:

"But neither said city council, nor any officer or officers of said city, shall otherwise, without special authority of law, have authority to issue any bonds, or create any debt or liability against said city in excess of the amount of revenue actually levied and applicable to the payment of such liability."

We are forced to the conclusion, after a careful study of the charter, that the so-called "certificates" issued under the Lemon & Co. contract were issued without authority of law, and are void, at least in the hands of the payee. But it does not follow that because the certificates are void the plaintiff is without a remedy against the city. It has received lands for street purposes, and sewer privileges, and other services, that it was authorized to contract for and pay for. It has attempted to pay for them in bonds which it had no right to issue, and that are, accordingly, worthless, and do not operate as payment. The city is most likely liable to pay for what it has received under the Lemon & Co. contract, but it is not necessary to express a definite opinion on that point at this time, as the case has been submitted merely upon the question whether a recovery can be had on the bonds, under a stipulation between counsel that the case should remain open for further testimony on the other issue if the court held the bonds void. All we determine now is that the so-called "certificates" are void, and that no recovery can be had thereon. On that issue all the testimony has been heard, and the issue is determined in favor of the city and against the plaintiff.