Leslie F. **HUNTT**

v.

The **GOVERNMENT OF the VIRGIN ISLANDS, Appellant.**

No. 15871.

United States Court of Appeals Third Circuit.

Argued Sept. 26, 1966.

Decided April 7, 1967.

Rehearing Denied May 24, 1967.

Francisco Corneiro, Atty. Gen. of the Virgin Islands, Charlotte Amalie, St. Thomas, V. I., for appellant.

John D. Marsh, Christiansted, St. Croix, V. I. (Young, Isherwood & Marsh, Christiansted, St. Croix, V. I., on the brief), for appellee.

Before KALODNER, HASTIE and SMITH, Circuit Judges.

## OPINION OF THE COURT

KALODNER, Circuit Judge.

In this action by the plaintiff against the Government of the Virgin Islands ("Government") for specific perform-

ance of an alleged contract to issue its revenue bonds on behalf of the plaintiff for the construction of a hotel project on the Island of St. Croix in promotion of its economy, the court below granted specific performance of the contract. This appeal followed.

The issues presented are, in broad outline, whether the court below erred (1) in transcending permissible limits of judicial action in its Judgment decreeing Government's performance of the contract, assuming *arguendo*, existence of a contract, and (2) in ruling that a contract had been entered into by Government with the plaintiff.

This is the second time this case has been here. In 1964, we reversed the District Court's entry of judgment on the pleadings, which sought specific performance or in the alternative damages, in favor of the defendant, 3 Cir., 339 F.2d 309, 311, on our view that "a full record is necessary for the determination of the issues", and, "Assuming *arguendo* that it may be determined ultimately that the bonds could not be issued because prohibited by law, it does not necessarily follow that the plaintiff may not be entitled to the damages claimed by him in the alternative or some part of them."

In the proceedings following remand, the plaintiff, by amendment to his complaint, withdrew his claim for damages and sought only to compel specific performance of the obligations of the alleged contract, i. e., to require Government to issue its revenue bonds to finance the earlier stated hotel project.

Since the instant controversy has its genesis in the Revised Organic Act of the Virgin Islands, as amended in 1958, a resolution adopted by the legislature of the Virgin Islands and subsequent legislation, their consideration is essential before we proceed to resolution of the issues presented by this appeal.

The Revised Organic Act of the Virgin Islands, as amended in 1958, in Section 8(b), 48 U.S.C.A. § 1574(b), authorized the Legislature of the Virgin Islands to "cause to be issued on behalf of said government [of the Virgin Islands] bonds or other obligations (1) for a specific public improvement or specific public undertaking authorized by an act of the legislature, and (2) for the establishment, construction, operation, maintenance, reconstruction, improvement, or enlargement of other projects, authorized by an act of the legislature, which will, in the legislature's judgment, promote the public interest by economic development of the Virgin Islands". It further provided that "Such bonds or obligations shall be payable solely from the revenues directly derived from and attributable to such specified public improvement, public undertaking, or other project. * * * *" [1]

Ostensibly pursuant to the authority granted by the 1958 amendment of the Revised Organic Act, the legislature of the Virgin Islands promulgated Resolution No. 147 on January 19, 1960. This Resolution recited that:

* * * * * *

"Whereas Leslie F. Huntt and Associates are exploring the possibility of establishing a hotel, apartments, stores, offices, garages, and commercial space in the Virgin Islands * * * and

"Whereas the Legislature of the Virgin Islands considers that such facilities if established would promote the public interest by assisting in the economic development of the Virgin Islands; Now, Therefore

"Be it Resolved by the Legislature of the Virgin Islands, that the issuance of revenue bonds or other obligations pursuant to § 8(b) of the Revised Organic Act of the Virgin Islands is hereby authorized for the purpose of establishing the facilities described above, provid-

---

1. It may be noted that Pub.L. 89–643, 80 Stat. 890, October 13, 1966, eliminated clause (2) from Section 8(b) of the Revised Organic Act, as amended, 48 U.S.C. § 1574(b). See Senate Report (Interior and Insular Affairs Committee) No. 1421, July 29, 1966, to Accompany S. 3080, 89th Cong.2d Sess.; 2 U.S.Congr. & Adm. News, 89th Cong.2d Sess., 1966, pp. 3192–3197.

ing specific plans therefor are approved by the Legislature, and providing that the development created thereby shall promote the public interest by economic development of the Virgin Islands."

The Resolution concluded with the statement that:

"On approval of said plans, the Legislature will take steps as are necessary to implement § 8(b) of the Revised Organic Act of the Virgin Islands to provide funds by the issuance of revenue bonds or other obligations for the establishment of said facilities."

Subsequently, the Legislature passed Act No. 577 (approved June 3, 1960). This Act referred to Resolution No. 147 as having authorized the issuance of revenue bonds pursuant to Section 8(b) of the Revised Organic Act, as amended, for the purpose of establishing a hotel, etc. in the Virgin Islands by Leslie Huntt and Associates, and stated that: " * * * it is the judgment of the Legislature that such facilities will promote the public interest by economic development of the Virgin Islands." The Act provided that issuance of bonds, in accordance with Section 8(b), in the amount of $3,000,000, for the purpose of establishing, constructing, operating and maintaining a hotel, etc. by Leslie Huntt and Associates "is hereby authorized and approved," and that "The Commissioner of Finance upon approval of the Governor of the Virgin Islands is directed and authorized to take such steps as are necessary to issue the bonds herein authorized * * * upon application by Leslie Huntt and Associates or such corporation as may be designated by Leslie Huntt and Associates."

Thereafter, the Legislature passed Act No. 743 (approved June 12, 1961), which provided that "notwithstanding" several Acts, including Act No. 577 "all authorizations for the issuance of bonds or other obligations heretofore or hereafter approved by the Legislature pursuant to section 8(b) of the Revised Organic Act of the Virgin Islands *shall be effectuated in accordance with rules and regulations prescribed by the Commissioner of Finance and approved by the Governor*" (emphasis supplied). Act 743 further provided that: "Subject to the provisions of the said section such rules and regulations shall provide for the issuance of appropriate certificates of tax exemption to the beneficiaries issuing the bonds or other obligations, and for the designation in the case of private beneficiaries of trustees to protect the interests of the Government of the Virgin Islands."

Subsequently, by Act No. 850 (approved March 16, 1962), the Legislature specifically repealed the foregoing Acts and all other Acts "relating to or authorizing the issuance of bonds or other obligations heretofore approved by the Legislature pursuant to Section 8(b) of the Revised Organic Act of the Virgin Islands * * *."

The District Court found, as "facts", that Resolution No. 147 evidenced the Legislature's "intention to authorize to Leslie F. Huntt and Associates the issuance of government bonds or other obligations for the construction of a hotel project in the Virgin Islands"; that plaintiff, relying on this Resolution, employed an architect and caused plans to be prepared and submitted to the Legislature for approval; that as a result of plaintiff's efforts having met the approval of the Legislature, Act No. 577 "came into being"; that Act No. 743 was enacted to clarify and implement the issuance of the bonds referred to in Act No. 577; that plaintiff requested the Governor to promulgate rules and regulations pursuant to Act No. 743; that in September, 1961, at the Governor's suggestion, plaintiff submitted a proposed draft of rules and regulations; that plaintiff expended $29,807.37 in travelling expenses and an additional $12,000 in other expenses in attempting to bring about his business venture; that he consumed approximately 644 days in working on the project and that his time was worth $175.00 per day; that on March 7, 1962, the Legislature repealed Act No.

577; and that this repealing Act, No. 850, was approved by the Governor on March 16, 1962.

Consistent with the contentions of the plaintiff, the District Court stated the following conclusions of law: that "Resolution No. 147 constituted an offer on the part of the Virgin Islands Legislature whereby it agreed to take such steps to initiate the issuance of bonds upon plaintiff providing specific plans which would have to be approved by the Legislature"; that " * * * plaintiff accepted the offer referred to above when such plans were submitted to the Legislature"; that "The Legislature and the Governor by enacting Act No. 577, which accepted plaintiff's plans, entered into a legally binding contract on behalf of the Government of the Virgin Islands with the plaintiff"; that " * * * plaintiff has done all that was required of him under the terms of the contract"; that " * * * defendant has breached its contract in failing to promulgate the rules and regulations as set forth in Act No. 743, by its attempt to repudiate the contract referred to above by enacting Act No. 850, and by its failure to issue the bonds"; that "Act No. 850 which attempted to repeal the enabling provisions of Act No. 577 is unconstitutional in that it is contrary to Section 3 of the 'Revised Organic Act of the Virgin Islands' * * which provides that '[n]o law impairing the obligation of contract shall be enacted'. Trustees of Dartmouth College v. Woodward, 4 Wh. 518 [4 L.Ed. 629] (1819)"; that "An award of damages * * * would be inadequate"; and that "To compel specific performance would do more complete and perfect justice, because of the special features of the contract which the parties entered into." Accordingly, the District Court entered the judgment compelling specific performance from which this appeal was taken.

The judgment provided in part as follows:

"Ordered, Adjudged and Decreed that the Government of the Virgin Islands, through the Commissioner of Finance and the Governor of the Virgin Islands, comply forthwith with the provisions of Act No. 577, and Act No. 743, * * * and that the Government of the Virgin Islands shall promulgate pursuant to Act No. 743 such rules and regulations for the issuance of the bonds described in the aforementioned acts and shall cause to be issued the bonds described in the aforementioned acts. It is

"Further Ordered that in the event the Commissioner of Finance shall fail to promulgate such rules and regulations as required by Act No. 743 or in the event the Governor shall fail to approve such rules and regulations within 30 days from the date of judgment, the rules and regulations prepared by the plaintiff shall become the rules and regulations under which said bonds shall issue."

The Government of the Virgin Islands contends on this appeal, first, that no contract arose, but that plaintiff had at best an expectancy under Act No. 577 which could be recalled by the Legislature; second, that Section 8(b) of the Revised Organic Act did not authorize the issuance of bonds on behalf of the Government for financing privately owned projects; third, that the record does not support the findings as to money and time expended by the plaintiff; fourth, that the District Court exceeded its powers when it directed the Governor to perform discretionary acts; and fifth, that the District Court erred in ordering the adoption of regulations submitted by the plaintiff, since this constituted an invasion of the rule-making powers of the Legislature and the Governor's discretionary function, and no standards had been established for the promulgation of such rules and regulations in Act No. 577.

We are of the opinion that the judgment of the District Court must be reversed.

In its determination to compel specific performance, the District Court professed to accomplish "more complete and

perfect justice," taking into consideration that "an award of damages * * * would be inadequate" and "the special features of the contract which the parties entered into." But the considerations which the exercise by a court of equity of its pervasive, indeed awesome, powers traditionally depend upon are not limited by technical determinations that a contract was made, or by the apparent singularity of the benefit to be derived by one party and its measurability in terms of money.

Here, the 1958 amendment to the Revised Organic Act did not merely clothe the Legislature of the Virgin Islands with the authority to issue government obligations within specific gross limits and restrictions as to maturity, interest and source of payment. It invested that Legislature with a positive duty to determine that any authorized project for which such obligations may be issued will "promote the public interest by economic development of the Virgin Islands." Moreover, such determination was unequivocally committed by the law to the judgment of the Legislature of the Virgin Islands.

█ █ We should think that a court of law and equity would hesitate to interfere in the performance by a legislative body of its political and policy decisions which, in the absence of evidence of taint or fraud, have as their primary, if not sole, objective, the general well-being of the community they are selected to represent. In our view, only the most compelling reasons and the clear necessity to avoid the most unconscionable results could, if at all, sustain the substitution by the court of its judgment for that which is committed to the discretion of the legislative organ.

█ We find no such motivation here. The Legislature, by Act No. 850, not only repealed the authorization for the issuance of the government bonds, but also rescinded its judgment that this private project being promoted by the plaintiff and his associates—for profit —would promote the public interest by economic development. This is itself a judgment which, we believe, the Legislature was free to make. Cf. City of El Paso v. Simmons, 379 U.S. 497, 85 S.Ct. 577, 13 L.Ed.2d 446 (1965); Home Building & Loan Ass'n v. Blaisdell, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934).

█ Indeed, this would seem to us to be so in the circumstances of this case without undue argument concerning the sanctity of contracts. See, Garrett v. Fisher, 116 Vt. 323, 75 A.2d 674 (1950). The plaintiff had made no commitment effectuating the private project to which the bond issue was irrevocably pledged, and did not claim that any funds to be derived from the proposed bond issue were pledged to him to compensate for his efforts.[2] Assuming, without more, that, as the District Court found, the plaintiff had indeed expended in excess of $29,000 and substantial time upon the faith of the Acts of the Legislature authorizing the bond issue, we could not agree that this, even with the makeweight of the hope of profit, would warrant foisting upon the people of the Virgin Islands a bond issue over which its Legislature and executive officers had no control and as to which they, whose judgment was required in the first instance, were not satisfied would promote the economic development of the Virgin Islands.

We may interject here that we are not oblivious to the fact that tourist trade is a factor not insignificant to the commercial life of the Virgin Islands. It may be less than argumentative that the proposed combination of

2. The plaintiff in fact testified that he proposed to obtain reimbursement for the time spent on the project by obtaining stock of the hotel development corporation. He also testified that he had not worked out a final agreement with a hotel operating company, but that "We were working on the basis of the final agreement wherein they were to pay us 66⅔ of the net operating profit, from which we would pay the interest and amortization of the bonds."

hotel, apartments, stores, offices, garages and commercial space would augment that commercial life. But we are not prepared to determine, in the stead of the Legislature, nor should the District Court, that a privately owned project of this kind would be in the interest of the public and would promote that public interest by economic development of the Virgin Islands. Indeed, it is not for the courts to say that this is the direction in which such economic development should be encouraged and supported.

What we have said transcends the matter of remedy, since we have subscribed to the right of the Legislature, in the circumstances of this case, to rescind the authorization it had given for the issuance of government bonds. But we also hold to the view that the concept of more complete and perfect justice required due consideration of the public interest and, as applied to this case, warrants refusal of the equitable relief granted to the plaintiff by the District Court.

We have other difficulties with the remedy granted by the District Court, and, indeed, with the conclusions upon which relief was afforded.

■ It is a well-settled rule that although a court may compel members of the executive branch of government to perform ministerial duties imposed upon them by the legislature, and may also compel executive officers to take action in matters involving judgment and discretion, a court will not direct an executive officer to exercise his judgment or discretion in a particular way. Stated somewhat differently, a court may compel an executive officer to perform a ministerial duty, and may even compel such an officer to proceed to exercise his judgment or discretion in regard to a matter in which he is vested with judgment or discretion, but a court will not *substitute* its judgment or discretion for that of an executive officer.[3]

■ This self-imposed limitation on judicial power stems from the doctrine of separation of powers; courts cannot invade the jurisdiction of the other departments of government in matters of policy, and for a court to substitute its judgment or discretion for that of a member of the executive branch of government would amount to such an invasion. "Interference in such a case would be to interfere with the ordinary functions of government", State of

---

3. The cases recognizing these principles are numerous. Panama Canal Co. v. Grace Line, Inc., 356 U.S. 309, 317–318, 78 S.Ct. 752, 2 L.Ed.2d 788 (1958); Wilbur v. United States, ex rel. Kadrie, 281 U.S. 206, 218, 50 S.Ct. 320, 74 L.Ed. 809 (1930); State of Louisiana v. McAdoo, 234 U.S. 627, 633–634, 34 S.Ct. 938, 58 L.Ed. 1506 (1914); United States ex rel. Ness v. Fisher, 223 U.S. 683, 691–694, 32 S.Ct. 356, 56 L.Ed. 610 (1912); United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 324–325, 23 S.Ct. 698, 47 L.Ed. 1074 (1903); Roberts v. United States ex rel. Valentine, 176 U.S. 221, 229–231, 20 S.Ct. 376, 44 L.Ed. 443 (1900); United States ex rel. International Contracting Co. v. Lamont, 155 U.S. 303, 308, 15 S.Ct. 97, 39 L.Ed. 160 (1894); United States ex rel. Dunlap v. Black, 128 U.S. 40, 48, 9 S.Ct. 12, 32 L.Ed. 354 (1888); United States v. Schurz, 102 U.S. 378, 395, 26 L.Ed. 167 (1880); Gaines v. Thompson, 7 Wall. 347, 348–352, 19 L.Ed. 62 (1868); Commissioner of Patents v. Whiteley, 4 Wall. 522, 533–534, 18 L.Ed. 335 (1866); Decatur v. Paulding, 14 Pet. 497, 514–517, 10 L.Ed. 559 (1840); Kendall v. United States, 12 Pet. 524, 610, 9 L.Ed. 1181 (1838); Marbury v. Madison, 1 Cranch 137, 163–166, 2 L.Ed. 60 (1803); Ernest M. Loeb Co. v. Avoyelles Drainage District No. 8, 92 F.Supp. 126, 133–135 (W.D.La.1950), aff'd, 189 F.2d 965 (5 Cir. 1951), cert. den., 342 U.S. 942, 72 S.Ct. 553, 96 L.Ed. 700 (1952); United States ex rel. Stayton v. Paschall, 9 F.2d 109, 113 (E.D.Ark.1925), error dismissed, United States ex rel. Slayton v. Paschall, 17 F.2d 1021 (CCA 8 Cir. 1926); Farmers' National Bank of Hudson v. Jones, 105 F. 459, 464–465 (E.D.Ark.1900).

Although many of these cases were mandamus actions, the principle is the same whether mandamus is sought, or whether, as in the present case, a mandatory injunction is sought. Panama Canal Co. v. Grace Line, Inc., supra, 356 F.2d at 318, 78 S.Ct. 752; United States ex rel. Riverside Oil Co. v. Hitchcock, supra, 190 U.S. at 324–325, 23 S.Ct. 698; Gaines v. Thompson, supra, 7 Wall. at 352–353.

Louisiana v. McAdoo, 234 U.S. 627, 633, 34 S.Ct. 938, 941, 58 L.Ed. 1506 (1914), and, in the words of Chief Justice Taney, "would be productive of nothing but mischief." Decatur v. Paulding, 14 Pet. 497, 516, 10 L.Ed. 559 (1840).

While it is not always easy to determine where the line of demarcation lies between a ministerial act and an act involving the exercise of judgment or discretion, the decisions do contain certain guidelines. As with all questions of statutory interpretation, the wording of the statute directing the performance of the act must be given prime consideration. United States v. Schurz, 102 U.S. 378, 395, 26 L.Ed.167 (1880). Consideration must also be given to the nature of the act to be performed, and although not determinative, the position of the individual authorized to perform the act. United States ex rel. Ness v. Fisher, 223 U.S. 683, 691–694, 32 S.Ct. 356, 56 L.Ed. 610 (1912); United States ex rel. Riverside Oil Co. v. Hitchcock, 190 U.S. 316, 324–325, 23 S.Ct. 698, 47 L.Ed. 1074 (1903); United States ex rel. Dunlap v. Black, 128 U.S. 40, 44, 9 S.Ct. 12, 32 L.Ed. 354 (1888); Decatur v. Paulding, supra, 14 Pet. 515–517; Marbury v. Madison, 1 Cranch 137, 164–165, 2 L.Ed. 60 (1803). Accordingly, where the duty in a particular situation is so plainly prescribed and defined as to be free from doubt and equivalent to a positive command, it is ministerial. Wilbur v. United States ex rel. Kadrie, 281 U.S. 206, 218–219, 50 S.Ct. 320, 74 L.Ed. 809 (1930); Roberts v. United States ex rel. Valentine, 176 U.S. 221, 230–231, 20 S.Ct. 376, 44 L.Ed. 443 (1900); Marbury v. Madison, supra, 1 Cranch 164. To be ministerial, the duty must be both peremptory and plainly defined. The law must not only authorize the act but must require it. United States ex rel. International Contracting Co. v. Lamont, 155 U.S. 303, 308, 15 S.Ct. 97, 39 L.Ed. 160 (1894). On the other hand, where the act to be performed involves the exercise of extensive judgment and investigation, calling for the consideration and decision of many matters, the act is discretionary rather than ministerial. United States ex rel. Ness v. Fisher, supra, 223 U.S. 691–694, 32 S.Ct. 356; United States ex rel. Riverside Oil v. Hitchcock, supra, 190 U.S. 324–325, 23 S.Ct. 698; United States ex rel. Dunlap v. Black, supra, 128 U.S. 44, 9 S.Ct. 12; United States v. Schurz, supra, 102 U.S. 395; Decatur v. Paulding, supra, 14 Pet. 515; Kendall v. United States, 12 Pet. 524, 610, 9 L.Ed. 1181 (1838). See also, King Christian Enterprises, Inc. v. Government of the Virgin Islands, 345 F. 2d 633, 636–637 (3 Cir. 1965) and Everlasting Development Corp. v. Sol Luis Descartes, 192 F.2d 1, 6 (1 Cir. 1951).

Although the plaintiff contends that the Legislature having authorized and directed the issuance of the bonds, that there remained only the ministerial acts of the Governor and Commissioner of Finance to adopt regulations and issue the bonds, we are of the opinion that the characterization of the functions of these executive officers as "ministerial" is inappropriate. Viewed in context, it is plain that the Legislature authorized the issuance of the bonds, but committed to the approval of the Governor the ultimate duty to determine the conditions and qualifications to be met. These are discretionary functions, we have no doubt. In no other manner than through the exercise of such discretionary functions could the Legislature be assured that the interest of the government and the public would be protected; that the integrity of the project, those behind it, and its progress, and operation, conformed to those standards which might be expected of a project directly supported by the government. All the more would this appear to be true where, as here, the project promoted by the plaintiff was to be privately owned.

What has been said is dispositive of the question as to whether the District Court transcended the scope of permissible judicial action in the remedy accorded to the plaintiff in its judgment.

Coming now, and briefly so, to the question as to whether the District Court correctly determined that a contract had been entered into between the plaintiff and Government.

 We do not agree with the offer-and-acceptance contract theory adopted by the District Court. First, Resolution No. 147, which the District Court held to be an "offer", was without legal effect. Government of the Virgin Islands v. Massac, 161 F.Supp. 704, 706 (D.V.I. 1958).[4] And, perhaps more to the point, the expenditures of the plaintiff for the preparation of plans and the submission of those plans to the Legislature did not constitute either an acceptance of any offer of the Legislature or any performance for which the bonds were committed. To the contrary, they were plainly promotional activities engaged in by the plaintiff for the purpose of inducing and persuading the Legislature that it should endorse the plaintiff's project and authorize the issuance of bonds pursuant to the enabling provisions contained in Section 8(b) of the Revised Organic Act as it was then amended. The remaining expenses incurred by plaintiff, from the rather abbreviated testimony on the subject, appear to have been travel and related items connected with the sale of bonds and with the regulations pertaining to them, the latter activity having been assumed by the plaintiff in an effort, apparently, to have something prepared for assimilation by the Governor. These expenses were incurred by way of anticipation and in furtherance of plaintiff's promotional efforts. Certainly, the bonds were not pledged to their reimbursement, and it would appear that the plaintiff, consistent with our view that these were promotional expenses, anticipated receiving in payment thereof stock of an operating company.

We believe that the contract contemplated by the Acts of the Legislature was the issuance of the bonds, and until the bonds were issued, or at the very least until the bonds or their proceeds were so committed that it would be unconscionable to fail to recognize a right to have them issued, no vested right existed to be protected.

 The discretionary authority invested in the executive by the Legislature suggests that we are not dealing with a completed obligation on the part of the Government of the Virgin Islands. For, although it authorized issuance of the bonds, the Legislature specifically contemplated that more was required than ministerial issuance. Thus, in Act No. 577, it provided for the issuance of the bonds subject to the approval of the Governor and upon application of Huntt and Associates; so too, by Act No. 743, the Legislature determined that regulations should be promulgated by the Commissioner of Finance subject to the approval of the Governor. "The public can act only through its authorized agents, and it is not bound until all who are to participate in what is to be done have performed their respective duties." Anthony v. County of Jasper, 101 U.S. 693, 697–698, 25 L. Ed. 1005 (1880), quoted in Young v. Clarendon Township, 132 U.S. 340, 349, 10 S.Ct. 107, 33 L.Ed. 356 (1889).

Finally, we expressly note that our disposition of this appeal on the grounds stated should not be construed as a tacit determination that the project here contemplated was one within the contemplation of Section 8(b) of the Revised Organic Act, as it was then amended. Since, as we have observed in footnote 1, the Congress has now withdrawn the provisions of the law which enabled the Legislature of the Virgin Islands to authorize bonds to be issued for private projects furthering the economic development of the Virgin Islands, the interest of justice does not require us to reach the issue of interpretation. We do express, however, our deep reserva-

---

4. The record discloses that Resolution No. 147 was never approved by the Governor of the Virgin Islands or passed over his veto, and, accordingly, "The resolution therefore never acquired the force of law." 161 F.Supp. 706.

tions that privately-owned projects as distinguished from government projects specifically authorized by the Legislature of the Virgin Islands were within the intendment of the enabling legislation in effect at the time concerned in this case.

Accordingly, for the reasons stated, the Judgment of the District Court will be reversed and the cause remanded with directions to dismiss the complaint.