STRATTON v. COMMISSIONERS' COURT OF KINNEY COUNTY et al.†

(Court of Civil Appeals of Texas. San Antonio. May 17, 1911. Rehearing Denied May 31, 1911.)

1. COUNTIES (§ 105*)—COURTHOUSES—POWER TO CONSTRUCT.

Under Const. art. 5, § 18, giving county commissioners such power over county business as is conferred by the Constitution and general laws, under article 11, § 2, requiring courthouses to be provided for by general law, and under Rev. St. 1895, art. 1537, subd. 7, requiring county commissioners to provide and keep in repair courthouses, county commissioners are empowered to construct such buildings.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 165; Dec. Dig. § 105.*]

2. COUNTIES (§ 105*) — COURTHOUSES AND JAILS—NECESSITY FOR CONSTRUCTION—DETERMINATION.

Whether a courthouse and jail are needed by a county is for sole determination by the commissioners.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 165; Dec. Dig. § 105.*]

3. COUNTIES (§ 192*) — COURTHOUSES AND JAILS—TAXATION—LIMITATION OF RATE.

The power of county commissioners under Const. art. 8, § 9, as amended December 19, 1890, and under Rev. St. 1895, art. 1538, to levy a tax of 25 cents on $100 valuation to construct buildings, sewers, and other permanent buildings, being limited to that levy for all such purposes, a levy can be made for a courthouse and jail only so far as the limit has not already been reached for the other purposes.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 302; Dec. Dig. § 192.*]

4. COUNTIES (§ 149*) — COURTHOUSES AND JAILS—POWER TO CREATE DEBT.

County commissioners can create a debt of the county to construct a courthouse and jail, if provision for collection of a tax therefor is made, as provided by Const. art. 11, §§ 6, 7.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 214; Dec. Dig. § 149.*]

5. COUNTIES (§ 122*) — COURTHOUSES — PAYMENT—METHOD—VALIDITY.

County commissioners have power to erect a courthouse and jail under a contract providing for payment of the contractors with warrants drawn against the courthouse and jail funds, though the payments are not all within the year of the making of the contract or construction of the building, and to provide for interest on any deferred payments evidenced by such warrants.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 181; Dec. Dig. § 122.*]

6. TAXATION (§ 2*)—POWER TO TAX.

Power to tax for governmental purposes is limited by the Constitution only.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 2; Dec. Dig. § 2.*]

7. TAXATION (§ 28*)—DELEGATION OF POWERS.

The general rule of constitutional law that a sovereign power conferred upon one branch

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

†Writ of error denied by Supreme Court.

of the government cannot be delegated applies to taxation, but does not prevent municipal corporations being given authority concerning taxation, subject to recall.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 60; Dec. Dig. § 28.*]

8. TAXATION (§ 28*)—POWER TO TAX—DELEGATION.

The Legislature cannot confer upon merely administrative or ministerial officers the power to make rules for taxation; and, if such officers are given authority to levy and collect taxes, it must be under rules prescribed for them by the power which grants the authority.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 60; Dec. Dig. § 28.*]

9. COUNTIES (§ 174*)—COURTHOUSES—BONDS—POWER TO ISSUE.

Power of a county to build a courthouse does not imply power to issue bonds therefor.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 264, 265; Dec. Dig. § 174.*]

10. COUNTIES (§ 124*)—COURTHOUSES—CONSTRUCTION—CONTRACTS—VALIDITY.

Authority of county commissioners to contract for construction of a courthouse cannot arise from estoppel, acceptance, or ratification, without legal authority.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 185; Dec. Dig. § 124.*]

11. COUNTIES (§ 105*)—COURTHOUSES—POWER TO CONSTRUCT—CONSTITUTIONAL LAW.

Const. art. 11, § 2, requiring courthouses to be provided for by general law, limits county commissioners' power to construct courthouses to the manner and means so provided.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 165, 166; Dec. Dig. § 105.*]

12. COUNTIES (§ 105*)—COURTHOUSES—POWER TO CONSTRUCT—CONSTITUTIONAL LAW.

Const. art. 8, § 9, limiting the rate of taxation for county purposes, limits the power of the Legislature under article 11, § 2, requiring courthouses to be provided for by general law, as well as county commissioners in acting under such law.

[Ed. Note.—For other cases, see Counties, Cent. Dig. § 165; Dec. Dig. § 105.*]

13. COUNTIES (§ 105*)—COURTHOUSES—POWER TO CONSTRUCT—STATUTES.

The power of county commissioners to provide for construction of a courthouse otherwise than from a sale of bonds was not abrogated by Act May 26, 1899 (Acts 26th Leg. c. 149), nor by Act April 28, 1903 (Acts 28th Leg. c. 4), authorizing issuance of county bonds.

[Ed. Note.—For other cases, see Counties, Dec. Dig. § 105.*]

14. MUNICIPAL CORPORATIONS (§ 902*)—WARRANTS—NATURE.

A municipal warrant or order is an instrument generally in the form of a bill of exchange or order, drawn by an officer of a municipality upon its treasurer, directing him to pay an amount of money specified to the person named, or his order, or bearer. They are in the ordinary form of commercial paper, but do not possess the qualities of such paper, being regarded as orders of the corporation on itself, and, in substance, the mere promise of the municipality to pay the amount specified, and subject to all the equities existing, or attached to the original transaction.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1887; Dec. Dig. § 902.*]

15. MUNICIPAL CORPORATIONS (§ 938*)—BONDS—NATURE.

Municipal bonds are negotiable with the attributes of commercial paper, and a bona fide holder thereof for value and before maturity can recover clear of equities against the original holder, subject to authority and regularity in issuance.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1955–1957; Dec. Dig. § 938.*]

16. MUNICIPAL CORPORATIONS (§ 1000*)—BONDS—TAXATION—INJUNCTION—PARTIES.

Holders of municipal bonds are necessary parties to suit to enjoin collection of taxes for their payment.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2169; Dec. Dig. § 1000.*]

Appeal from District Court Kinney County; W. C. Douglas, Judge.

Action by Richard Stratton against the Commissioners' Court of Kinney County, Tex., and another. From an order denying an injunction, plaintiff appeals. Affirmed.

John J. Foster, for appellant. R. V. Davidson and G. W. L. Smith, for appellees.

NEILL, J. The nature and character of this suit may be best shown by appellant Stratton's, who was plaintiff below, original petition, and defendants', who are the appellees, original answer:

The petition, omitting the marginal venue, term of court, and address, is as follows:

"Your petitioner shows unto this court that Richard Stratton is the plaintiff, and that the commissioners' court of Kinney county, Tex., and N. Castro, A. Schwandner, W. O. Vincent, L. N. Lewis, the members composing said commissioners' court, and Falls City Construction Company, a corporation organized and existing under the laws of the state of Kentucky, are the defendants in this cause.

"First. Plaintiff shows unto the court: That he is a resident citizen and property taxpayer of Kinney county, Tex., and owns real and personal property situated in said county, subject to taxation therein.

"Second. That said commissioners' court and the members composing said court are also resident citizens of Kinney county, Tex. That Joseph Veltman is the duly elected, qualified, and acting county judge of said county. That N. Castro is the duly elected, qualified, and acting county commissioner for commissioner's precinct No. 1 of said county. That A. Schwandner is the duly elected, qualified, and acting county commissioner for commissioner's precinct No. 2 of said county. That W. O. Vincent is the duly elected, qualified, and acting county commissioner for county commissioner's precinct No. 3 of said county. That L. N. Lewis is the duly elected, qualified, and acting county

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

commissioner for commissioner's precinct No. 4 of said county.

"Third. That said commissioners' court have heretofore during the year 1910 decided by regular orders of the court that the building used by said county as the courthouse was insufficient, unsafe, and inadequate for the use required by law, and decided and determined that it was necessary for the county to erect a sufficient and proper county courthouse building, and thereupon employed an architect and adopted plans and specifications for said building, and issued advertisements in the newspapers for competitive bids thereon. That at a meeting of the court the 7th day of July, 1910, said court received said bids and awarded a contract to the Falls City Construction Company, defendant herein, they being the lowest and best bidders for the erection of a courthouse building for said county at the county seat, in the town or city of Brackettville, Tex., and thereupon entered into or authorized the erection of said building, whereby said county agreed to pay for the same in annual installments, with 6 per cent. interest thereon, as follows, to wit: (1) Due and payable on the 1st day of January, 1911, the sum of $2,500. (2) Due and payable on the 1st day of January, 1912, the sum of $3,000. (3) Due and payable on the 1st day of January, 1913, the sum of $3,000. (4) Due and payable on the 1st day of January, 1914, the sum of $3,000. (5) Due and payable on the 1st day of January, 1915, the sum of $3,000. (6) Due and payable on the 1st day of January, 1916, the sum of $3,000. (7) Due and payable on the 1st day of January, 1917, the sum of $3,000. (8) Due and payable on the 1st day of January, 1918, the sum of $3,000. (9) Due and payable on the 1st day of January, 1919, the sum of $3,000. (10) Due and payable on the 1st day of January, 1920, the sum of $3,000. (11) Due and payable on the 1st day of January, 1921, the sum of $3,000. (12) Due and payable on the 1st day of January, 1922, the sum of $3,000. (13) Due and payable on the 1st day of January, 1923, the sum of $3,000. (14) Due and payable on the 1st day of January, 1924, the sum of $3,000. (15) Due and payable on the 1st day of January, 1925, the sum of $3,000. Total, $44,500. Said contract and the orders of court adopting it were made at a regular meeting and term of the court when all the members composing the court were present in August, 1910. That at the time said contract was made said court made due provision for the payment of said debt and the interest thereon by the levy and collection of a special courthouse building tax annually of 25 cents on the $100 valuation on all the taxable property in said county, or so much thereof as might be necessary by contract and orders of court in conformity with the letter of the Constitution and statutes of the state of Texas for the purpose of raising sufficient by taxation to pay said annual installments as they fell due, and the interest thereon, which interest was a part of the contract price, and to provide a two per cent. sinking fund. At the same time said court made an order levying said tax for each of said years above named, and made provision for and created a fund or class of funds known as the 'County Courthouse Building Fund, Class No. 4,' and against which fund the contractor agreed to register the warrants or county script, which might be issued to him in payment of said courthouse building, which warrants were to be paid off in the order of their registration, all of which registration, etc., in fact has been done, and orders of the court were made at the time adopting said contract and providing for the levy of said tax and the creation of said funds and class of funds, and for the issuance of said warrants from time to time by said court as said court and their architect should inspect the work and pass upon and reject or accept or allow the claims of the contractor for work done and material furnished as the erection of said building progressed, and when said claims were audited and allowed, the payment of the claim was directed according to the letter of the statutes, and said warrants or script were issued and delivered to said contractor, one of the defendants herein, who thereafter duly registered the warrants so delivered against said fund No. 4.

"Fourth. At the time said contract and orders of the court adopting it were made, it was recited in said contract or orders of court that said contract was made on the faith of or under and by virtue of the Constitution and statutes of the state of Texas and the decrees and decisions of the Supreme Courts of Texas, to wit, S. S. Ashe v. County of Harris, 55th Texas, p. 49; Davdis v. Burney, 58th Texas, p. 364; San Patricio County v. John McClane, 58th Texas, p. 243; Creswell Ranch & Cattle Company v. Roberts, 27th S. W. Rep. p. 737; and the Jackson-Foxworth Lumber Company v. Hutchinson, 88 S. W. Rep. 412; and the opinion rendered by the Attorney General on the 7th day of June, 1909, and Tally et al. v. Commissioners' Court of Jackson County (Ala.) 39th South. Rep. p. 167. And that by virtue of or upon the faith of said Constitution, statutes, and Supreme Court decisions and opinions said contract and orders of the court were made.

"Fifth. Plaintiff further shows unto your honor: That said contractors have recently completed said courthouse building, that the same has been accepted by the county, and that said county officials have taken possession of it, and have passed an order to that effect, a copy of which is hereto attached and made a part of this petition. That said commissioners' court have in all things in reference to said courthouse building matter conformed to the seeming letter of the law, or the semblance of authority thereof, and have already paid the first installment due on

said contract price and interest thereon and the warrants issued to represent the same, and will continue to do so unless restrained by this court.

"Sixth. Plaintiff further shows that each and every act and all orders made and adopted by said commissioners' court providing for the levy assessment and collection of said special courthouse building tax to pay for said warrants were, have been, and are now in violation of the laws of Texas, in this: That while said court had and has the sole power to determine the necessity for and to make contracts for the construction of said buildings, and to levy an annual tax of not exceeding 25 cents on the $100 in any one year on all the taxable property in said county for such purposes, yet said power of said court is conditioned upon the commissioners' court first borrowing money by the issuance and sale of negotiable interest bearing county courthouse bonds, maturing not exceeding 40 years, as authorized by law, and said taxing power could and can only be exercised by the said court after issuing said bonds. That the permission granted counties to issue bonds restricts them to the only method of incurring said indebtedness and providing for its payment. The said bonds could and can only be issued when and not until the question of issuing bonds shall have been first submitted to the vote of the qualified taxpaying voters at an election duly ordered and held according to law and when and not until the majority of said voters voted in favor of the issuance of said bonds, as required and provided for by the act of the Legislature of the state of Texas, approved May 26, 1899, and by other laws of said state. That said court has in no manner complied with said laws as to the ordering and holding of an election for the issuance of bonds, nor has said court provided for the issuance of bonds in any other manner, but. as before alleged, have constructed, or have had constructed in the manner aforesaid, said building, and have issued in payment to the contractor therefor ordinary county warrants or script on said fund and payable out of said tax levy. Plaintiff admits that said court has acted in all matters as to the ordering said building erected, the levying of said tax and contracting for. said building, within their jurisdiction, constitutional and statutory powers, except that said powers can only be exercised by the consent of the property taxpayers of said county shown by their votes for the issuance of the bonds as aforesaid. That the defendant herein, not complying with the laws as hereinbefore charged, was, and has been, and is now, proceeding without authority of law and in violation thereof, and that said court was and is without power to create said county tax courthouse building fund class No. 4 for the purpose of placing therein or to the credit thereof of a void tax or unlawful revenue, or provide for the payment of said building out of a special fund or class of funds created for that purpose.

"Seventh. Plaintiff further shows: That all of said proceedings done or attempted to be done, or that will be done in reference to said tax levy or proposed tax levy, are and will be null, void, and of no effect, in that the same have been done and will. be done and continue to be done contrary to the true intent, meaning, spirit, and purpose of the law; that said tax of 25 cents on the $100 will be levied by said court during the year 1911 to pay the next installment due in January, 1912, for said building, and in compliance with the duty imposed by said contract will be levied by said court during each year thereafter until the said warrants are fully paid, and that all property subject to taxation in Kinney county will be so taxed as to raise funds to discharge the same. That a lien or claim will be fixed upon all of said property and upon that of plaintiff, by reason of said taxation and levy, and, if payment thereof is refused, suit will be brought to enforce the collection and levy of said special tax, and said property will be advertised and sold for the payment of the same. The title of said lands and properties of this plaintiff will be clouded thereby, and said plaintiff will be subjected to great annoyance, expense, and litigation, and irreparable injury to the real estate and personal property of this plaintiff is threatened by the attempt and avowed purpose of said court to levy and collect said courthouse building tax heretofore levied, or which will be hereafter levied this year, to discharge that part of said obligation next falling due in January 1, A. D. 1912."

Prayer: "Wherefore this plaintiff brings this suit for himself, and prays that the commissioners' court of Kinney county, Tex., and the members composing said court and the Falls City Construction Company, be made parties defendants to this petition or bill of complaint, and that said court and the members thereof be temporarily restrained from the levy and collection of said tax during the year 1911 and the subsequent years thereto, which said court has pledged itself to levy and collect, and from proceeding any further in reference to the levy or collection of said tax heretofore pledged for the purpose of raising revenue and funds to pay off said courthouse building debt, for the reason that said court has no lawful right to levy said tax except to pay off a bonded indebtedness and for a debt created for money borrowed by the issuance of county bonds, and until the question of erecting said courthouse building and the issuance of bonds to pay the money borrowed to pay the cost of construction therefor, as provided by law, shall have been first submitted to a vote of the people, and the qualified tax paying voters of said county as required by law, which has not been done, and on this account

your plaintiff alleges and declares that the levy and collection of said tax is and will be wholly void, and, on this account, prays that this court will restrain said commissioners' court and the members thereof from levying or attempting to levy any of said tax. That said temporary injunction on final hearing will be made perpetual; for all costs of suit and further relief, as plaintiff may be entitled to in law or in equity." It is signed by plaintiff's attorney and duly sworn to by the plaintiff himself.

The answer of defendants, omitting the formal parts thereof, is:

"Now come the defendants in the above-entitled cause, the commissioners' court of Kinney county, Tex., and Falls City Construction Company, and before pleading, but reserving their right to plead, and answer, demur to plaintiff's petition, and for reason for said demurrer say: That the plaintiff's petition is wholly insufficient in law, and is without equity, and contains no allegations or facts showing or tending to show that said plaintiff is entitled to the injunction, or to the relief therein prayed for, and of this the said defendants pray the judgment of the court.

"And for special demurrers to said petition, said defendants say: That the said plaintiff is not entitled to the injunction, or to the relief prayed for in said petition, because:

"(a) It appears from said petition that the county commissioners' court of said Kinney county, acting in pursuance of and under and in strict compliance with the Constitution and laws of Texas, ordered and directed the construction of a courthouse building for said county, and fixed the cost thereof, and ordered that said building should be paid for by the levy of a tax of not exceeding 25 cents on the $100 valuation in any one year, and the issuance of the warrants of said county, payable out of the courthouse building fund created by the levy of said tax, and entered into a contract with defendant company for the construction thereof, and at the time of making said contract and the creation of said debt for said building made provision for the levying and collecting of a sufficient tax to pay the interest thereon, and provided at least 2 per cent. as a sinking fund for the discharge of said debt, evidenced by said warrants, and that the interest mentioned in said petition was a part of the contract price, and it appears from said petition that the acts and proceedings of said commissioners' court were sufficient in law to create a lawful debt of the county and to levy said taxes, and to issue said warrants, and that it was not necessary for said court to order an election for the issuance of bonds to evidence the indebtedness; the matter of submitting the issuance of bonds to the voters being wholly within the discretion of said court.

"(b) That while such building was being constructed the said commissioners' court of said county audited and allowed the claims of said company for work done and materials furnished, and issued warrants to evidence the indebtedness created by the allowance of said claims, which claims, when allowed, constituted a judgment of said commissioners' court against said county.

"(c) That said building has been erected in all respects in compliance with said contract, and has been duly accepted by an order of said court, and that said county has taken actual possession of said building, and is now in such possession and in the use thereof, and that said company and its surety have been discharged from all further obligations under said contract, and that said company has received warrants from said county evidencing the entire indebtedness incurred in the construction of said building, and the first installment of said warrants has fallen due and has been paid; and the county, having acquired a legal title to the said building, and created a legal indebtedness, cannot escape its payment.

"And the said defendants pray judgment of their foregoing special demurrers, and that said petition be held insufficient and stricken out at the cost of said plaintiff. And, if said demurrers be overruled, then the said defendants for answer herein say: That they admit each and all of the allegations contained in said petition in so far as they consist of statements of facts, except the allegation contained in the sixth paragraph thereof, wherein it is alleged that each and every act and all orders for the levy, assessment, and collection of said special courthouse building tax, to pay for said warrants, were, have been, and are now, in violation of the laws of Texas, and that said courthouse could only be constructed upon the commissioners' court first borrowing money by the issuance and sale of negotiable, interest-bearing courthouse bonds, maturing not exceeding 40 years after their issuance, and that said taxing power could and can only be exercised by the said court after issuing said bonds. That the permission granted counties to issue bonds restricts them to the only method of incurring said indebtedness, and providing for its payment. That said bonds could and can only be issued when, and not until, the question of issuing bonds shall have been first submitted to the vote of the qualified tax paying voters at an election duly ordered and held according to law, and when, and not until, the majority of said voters voted in favor of the issuance of said bonds as required and provided for by the act of the Legislature of the state of Texas, approved May 26, 1899, and by other laws of the state.

"Defendants further deny that part of paragraph 6 which states that said powers can only be exercised by the consent of the property taxpayers of said county, shown by

their votes for the issuance of said bonds; and that said county defendant herein, not complying with the laws as hereinbefore charged, was, and has been, and is now, proceeding without authority of law and in violation thereof, and that said court was and is without power to create said county tax courthouse building fund, class No. 4, for the purpose of placing therein or to the credit thereof the proceeds of a void tax or unlawful revenue, or provide for the payment of said building out of a special fund or class of funds created for that purpose. Defendants further deny that part of paragraph 7 of plaintiff's petition which states 'that all of said proceedings done, or attempted to be done, or that will be done in reference to the said tax levy, are, and will be, null, void, and of no effect, in that the same have been done, and will be done, and continue to be done, contrary to the true intent, meaning, spirit, and purpose of the law.' Defendants for further answer say that as charged in said petition, and as they now allege, the said county of Kinney and said commissioners' court in all matters in and about the orders for the construction of said building, the adopting of plans and specifications, making a contract for the erection thereof and determining the cost and providing for the payment of the debt created by the erection of said building, and the levy of a tax to discharge said debt and interest thereon, acted under and in pursuance of the Constitution and laws of Texas in every respect, and in all matters said Constitution and laws have been complied with, and that their action has to the best interest of said county, and said court has considered and adjudged, and said court believes and now alleges, that it would not have been to the best interest of said county to issue and put upon the commercial markets of the country negotiable coupon bonds, as authorized by the laws of Texas, and thereby prevent said county and the taxpayers thereof from interposing and urging thereafter or at any time they may see proper any defenses to said debt as may be done under the plan of payment adopted. And that said plan of payment is much more economical and a better plan in every way than that of issuing the irrevocable obligation of the county.

"Defendants further answer that they recognize the right under the law of the commissioners' court to submit the question of the issuance of bonds to the voters, if, in the judgment and discretion of said court, the issuance of said bonds would be the better plan to pursue; but reassert the authority of said court to exercise its discretion in this matter, and to adopt and pursue the plan, which, in their judgment, would work the greatest safety and economy to the county, which discretion (vested in them by law) has been exercised after careful consideration and deliberation. Defendants, having

fully answered plaintiff's petition, pray that the said injunction sought be denied, and that they be discharged by the court with the costs in this behalf incurred."

The matters of fact alleged therein are duly sworn to by the secretary and agent of defendant Falls City Construction Company. On April 3, 1911, the temporary writ of injunction prayed for was refused by the district court, and from the order denying the same this appeal is prosecuted.

Appellant in his brief presents as his only assignment of error and proposition the following: "The court erred in not granting a temporary injunction restraining the county commissioners of Kinney county, Tex., from levying and collecting a tax to pay the warrants issued for the building of the courthouse as prayed for in the plaintiff's original petition."

As counter propositions the appellees present the following:

(1) "The commissioners' courts of the counties of Texas have the power to construct, or have constructed, courthouses and jails, or bridges, or any of them."

(2) "The question as to whether a courthouse and jail are needed by the county is one solely for the determination of the commissioners' court, and their discretion and judgment is final."

(3) "For the construction of said courthouse and jail the said commissioners' court have the power under the Constitution and laws of Texas to levy a tax on all property subject to taxation, not to exceed 25 cents on the $100 valuation, in any one year."

(4) "The commissioners' court has the power under the Constitution and laws of Texas to create a debt of the county for the construction of a courthouse and jail, provided that at the time of the creation of said debt provision is made for levying and collecting a sufficient tax to pay the interest thereon, and provide a sinking fund of at least 2 per cent."

(5) "The commissioners' court has the power, by and through contractors, to build said courthouse and jail, and make provision in such contract for the payment of its obligation to such contractors, and provide for the time of payment thereof, and evidence such obligations by its warrants, or county scrip, issued and drawn upon its courthouse and jail funds; and the fact that such payments or part of them are not within the year of the making of such contract or the construction of said courthouse and jail, or their completion, do not in any manner affect the power of the county to issue warrants evidencing such indebtedness as it matures, and the said commissioners' court, by such contract, has the authority to agree to and provide for interest on any deferred payments as evidenced by such county warrants."

(6) "The authority granted by the Legislature of Texas to counties upon a vote of the people to issue negotiable bonds and coupons

to evidence their indebtedness for the construction of courthouses and jails does not in any manner or to any extent, affect, change, or lessen the power of the county commissioners' court to order the building of courthouses and jails, or their constitutional power to levy a tax for their construction, or to issue warrants evidencing the indebtedness contracted for such buildings. Without an act of the Legislature, counties cannot issue bonds; and whether warrants shall issue, or bonds issue, is a matter for the judgment and discretion of the commissioners' court— the bonds to be issued only after an election is ordered by the commissioners' court and after a vote of the taxpayers in favor thereof."

These counter propositions will be considered seriatim.

[1] (1) Have the county commissioners' courts of the several counties in this state the power to construct courthouses? "The county commissioners * * * shall exercise such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of the state, or as may be hereafter prescribed." Article 5, § 18, Const. 1876. "The construction of courthouses * * * shall be provided for by general laws." Article 11, § 2, Const. 1876. Of county business, expressly enumerated, which the county commissioners' courts are empowered by law and made their duty to transact, is "to provide and keep in repair courthouses." Article 1537, subd. 7, Rev. St. 1895. These constitutional provisions and the legislative enactments require an affirmative answer to the question and establish appellees' first proposition, unless said legislative provision is affected by Acts 26th Leg. p. 258, or by the Acts 28th Leg., 1 Called Sess. p. 9, provided the tax levied for the erection or repair of public buildings shall not exceed 2½ mills on the dollar per year (article 1539, Rev. St. 1895), and is not in derogation of article 8, § 9, of the Constitution, which will be hereafter considered.

[2] (2) The same answer should be given the second proposition, unless it is affected by said legislative enactments and in derogation of the same constitutional provision suggested in relation to the first. Robertson v. Breedlove, 61 Tex. 320; Brown v. Graham, 58 Tex. 254. See, also, Nolan County v. State, 83 Tex. 182, 17 S. W. 823; Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880.

[3] (3) While the county commissioners' courts have power to levy a tax on all property subject to taxation for the construction of courthouses and jails, it may or may not be to the extent of 25 cents on $100 valuation in any one year for that purpose; for its power to levy a tax of that amount for the erection of public buildings, streets, sewers, waterworks, and other permanent improvements extends to and is limited to all, not each or some, of these purposes. In other words, 25 cents on the $100 valuation

is the full extent of the taxing power of the county commissioners' court for all the purposes above enumerated. If, therefore, a part of such power has been exercised for raising a fund for any of the enumerated purposes, other than providing for a courthouse and jail, a tax to the extent of 25 cents on the $100 valuation could not be levied for courthouse and jail purposes. For in such event a part of the taxing power would have been exercised; and, to that extent, exhausted, so that only what remained could be exercised for any other of the purposes enumerated. Art. 8, § 9, Const. 1876, as amended December 19, 1890; article 1538, Rev. Stats. 1895; Mitchell County v. Bank, 91 Tex. 361, 43 S. W. 880; Ault v. Hill County, 102 Tex. 335, 116 S. W. 359.

[4] (4) Has the county commissioners' court the power under the Constitution and laws of this state which is asserted in appellees' fourth proposition? If its power is not limited or controlled by the acts of the Twenty-Six and Twenty-Eighth Legislature referred to in our consideration of appellees' first proposition, we believe it has. Article 11, §§ 6, 7, Const. 1876; Nolan County v. State, 83 Tex. 182, 17 S. W. 823; McNeal v. Waco, 89 Tex. 83, 33 S. W. 322; Mitchell County v. Bank, 91 Tex. 370, 43 S. W. 880; Bassett v. El Paso, 88 Tex. 168, 30 S. W. 893; 1 Cooley on Taxation (3d Ed.) 586, and cases cited in note 2 on same page; 1 Abbott, Munic. Corp. §§ 149, 181.

[5] (5) The correctness of this proposition depends upon the effect the acts of the Twenty-Sixth and Twenty-Eighth Legislatures before referred to have upon the question it presents.

(6) Like all other propositions advanced by appellee under the assignment, the correctness of the sixth may depend upon the construction of the legislative acts above referred to.

So much of the legislative enactments pertaining to the question involved in this case, as is necessary to be shown, are: Section 1 of the act of May 26, 1899, which is as follows: "Hereafter it shall be unlawful for the commissioners' court of any county, or the city council of any incorporated town or city in this state, to issue the bonds of said county, or town or city, for any purpose authorized by law, unless a proposition for the issuance of such bonds shall have been first submitted to a vote of the qualified voters, who are property taxpayers of said county, town or city, and unless a majority of the said qualified property taxpayers, voting at said election, is in favor of the proposition for the issuance of bonds, then the said bonds shall not be issued. If the proposition for the issuance of bonds be sustained by a majority of the said property taxpayers, voting at said election, then the said bonds shall be authorized and shall be issued by the said commissioners' court, or said town or city council; provided, that this act shall

not be construed to authorize and render valid bonds without being first submitted to the Attorney General, and certified to by him, as now required by law." And section 1 of the act of April 28, 1903 (Acts 28th Leg. c. 4), which is: "Be it enacted by the Legislature of the state of Texas: That article 877, chapter 2, title 25, Revised Civil Statutes 1895, be amended so as to hereafter read as follows: Article 877. The county commissioners' court of any county in this state is hereby authorized and empowered to issue the bonds of said county for the following purposes: (1) For the erection of a county courthouse and jail, or either. (2) For purchasing or constructing bridges for public purposes, within the county or across a stream that constitutes a boundary line of the county, or for the purpose of improving and maintaining the public roads in the county; provided, that this act shall not be construed as authorizing the commissioners' court to issue bonds for any of the said purposes without submitting the same to a vote of the people of said county as provided in chapter 149, acts of the Twenty-Sixth Legislature, Laws of 1899; provided further, that when the commissioners' court deem it advisable to issue bonds for both the purchase or construction of bridges and the improvement and maintenance of the public roads, both questions may be submitted and voted on as one proposition."

In view of the law as thus enacted, did the county commissioners' court of Kinney county have authority to enter into the contract described in plaintiff's petition for the erection of a courthouse and pay for the same in the manner provided by such contract?

Before going further into the question of power of county commissioners' courts in this state to contract for the construction and payment for a courthouse, we shall state some general principles of law which we deem applicable to the question. The authority to make such a contract involves the authority of the county to raise money by taxation to discharge the debt created in the manner provided.

[6] The power to tax is an attribute of sovereignty, and the extent to which this power may be exercised for governmental purposes finds its only limitation in the Constitution. Unless restrained by the Constitution, not only is this power unlimited in its reach as to subjects, but it recognizes no limits, and may be carried to the extent of exhaustion and destruction. And thus may be used as a weapon of suicide against the government itself. Though necessary to the ends of government, when unrestrained, it is the most powerful and destructive engine of oppression that has ever been put in operation. It may take from the people their money and cast it into fetters with which to bind them as slaves, as history shows it often has done. The only things that can save the people from the destructive force

of this power are the constitutional barriers they have erected against it; and a vigilant, fearless, faithful, and righteous administration of the law; so that it may not go beyond these barriers. Even then the power is dangerous; for we all know that ofttimes thieves do break through and steal.

[7] The general rule of constitutional law that a sovereign power conferred by the people upon one branch of the government cannot be delegated applies with peculiar force to the case of taxation. The taxing power is vested by the Constitution in the Legislature; and within that department of government lies the authority to prescribe the rules of taxation, and to regulate the manner in which those rules shall be given effect. The Legislature must in every instance prescribe the rules under which taxation may be laid. It must originate the authority under which, after due proceedings, the tax collector demands the contribution; but it need not prescribe all the details of action, nor even fix with precision the sum to be raised or all the particulars of its expenditure.

But there is one seeming exception to the general rule that the Legislature may not delegate any portion of its authority, which relates to municipal corporations. Such corporations are a part of the machinery of state government, and the authority given them by the Legislature frequently extends to taxation; and in many cases the state does not go beyond prescribing rules of limitation within which for municipal purposes the local authorities of such corporations may levy taxes, but it has full reserved power, nevertheless, to limit or recall the delegation at pleasure.

[8] The Legislature cannot confer upon merely administrative or ministerial officers the power to make rules for taxation; and, if such officers are given authority to levy and collect taxes, it must be under rules prescribed for them by the power which grants the authority. Cooley on Taxation (3d Ed.) 99 et seq.

[9] A distinction is usually made between municipal corporations, such as incorporated cities, and quasi corporations, such as counties and townships. The powers of such governmental agencies as counties, townships, and school districts are generally more strictly construed than those of incorporated municipalities. The former class of corporations have no implied power to borrow money and issue negotiable bonds. For this purpose direct legislative authority is absolutely essential. Hence it is held that as such quasi corporations are for purposes local and administrative, and having power of levying taxes to defray all public charges created, whether they are or not formally invested with corporate capacities, they have no power or authority to make or utter commercial paper of any kind, unless the power is expressly conferred upon them by law or clearly implied from some other power ex-

pressly given which cannot be fairly exercised without it.

[10] It is upon this ground it is held that the power of a county to build a courthouse does not involve or imply the authority to issue bonds therefor. Claiborne Co. v. Brooks, 111 U. S. 400, 4 Sup. Ct. 489, 28 L. Ed. 470; Hill v. Memphis, 134 U. S. 198, 10 Sup. Ct. 562, 33 L. Ed. 887; Young v. Clarendon, 132 U. S. 340, 10 Sup. Ct. 107, 33 L. Ed. 356; Kelley v. Milan, 127 U. S. 139, 8 Sup. Ct. 1101, 32 L. Ed. 77.

[11] We now recur to the question, Had the commissioners' court of Kinney county under the Constitution and laws of this state the authority to enter into the contract described in plaintiff's petition for the erection of a courthouse, and pay for the same in the manner provided for in said contract? This does not involve the question of legislative power, but whether the Legislature has granted the power to the county commissioners' court to make such a contract. If there was no legal authority for the contract, that authority cannot be created through the application of any doctrine or principle of estoppel, acceptance, or ratification. Without such authority, it is ultra vires, and cannot be enforced. Abbott's Munic. Corp. § 249, and authorities cited in notes.

[12, 13] It has been seen from what we have said in considering appellees' counter-propositions under this assignment that county commissioners are required by the Constitution to exercise such powers and jurisdiction over all county business as is conferred by the Constitution and laws of the state; and that, while the construction of county courthouses is "county business," the same Constitution requires that construction of them shall be provided by general law. This in our opinion limits the exercise of the power of county commissioners' courts to construct courthouses to the manner and means which shall be provided by general law; and that article 8, § 9, is a limitation upon the power of the Legislature in passing such general law, as well as upon the county commissioners' courts in the exercise of their authority under it. If there were a failure of the Legislature to provide by general law for the construction of courthouses, we should then fail to perceive any authority in the county commissioners' courts of the several counties in the state to enter into contracts for their construction, which would require the levy and collection of a tax to pay for their erection. As is before shown, a county has no inherent power to levy and collect taxes; that the power to tax is sovereign; that, while it may be delegated to a public corporation, such as a county, school, district, etc., if there is no delegation of the power, it does not exist and cannot be exercised; and that, when delegated, it must be exercised in strict accordance with the legislative enactment conferring the power.

But we have also seen in considering the counter-propositions that the Legislature has conferred upon the county commissioners' court the power "to provide and keep in repair courthouses, jails and all necessary public buildings (article 1537, subd. 7), and that the power to levy and collect the tax for the purpose is conferred, in accordance with article 8, § 9, of the Constitution, by article 1538, Rev. Stats. of 1895. It was held by the Supreme Court in Mitchell County v. Bank of Paducah, 91 Tex. 361, 43 S. W. 880, that, "there being no courthouse in the county of Mitchell, the commissioners' court of that county was by law vested with the discretionary power to determine the following questions with reference to the improvement needed: (1) Whether it would build a courthouse or not; (2) what the cost of the building should be; (3) whether the building should be paid for by the sale of bonds or otherwise; (4) if by selling bonds, then at what time the bonds should mature and the rate of interest they should bear; (5) what sinking fund exceeding 2 per cent., if any, should be provided within the limits of the law." From this it is clear that the county commissioners' court had the power, at that time, at least, to provide for building a courthouse, to determine whether it should be paid for by the sale of bonds or otherwise, and to levy and collect taxes, within the constitutional limit, to pay for its construction, whether it was to be paid for by the sale of bonds or otherwise. This clearly shows the power of the court to provide for its construction otherwise than from the sale of bonds.

[14] Has this power conferred by the Legislature been abrogated by the act of May 26, 1899, above quoted? We think not. It makes it unlawful for any commissioners' court to issue bonds of the county for any purpose authorized by law, unless a proposition for their issuance shall be submitted to the voters who are property taxpayers of said county and a majority of such qualified property taxpayers voting at said election is in favor of the issuance of bonds. If, then, the commissioners' court determine that the courthouse to be built is to be paid for otherwise than by the sale of bonds, and bonds are not issued for that purpose, the act can have no application to the question involved in this case. Nor does act of May 28, 1903, affect the question. It simply authorizes and empowers the county commissioners' court to issue bonds for certain designated purposes, but does not take away its authority or power to accomplish such purposes without their issuance. If, however, there be no distinction between bonds, such as come within the meaning of the act of May 26, 1899, and warrants, such as are provided for in the contract described in plaintiff's petition, the acts referred to are directly applicable and render the warrants, so called, absolutely null and void; for the county commissioners' court cannot do by indirection

that which they cannot do directly. The form of the warrants is not set out in plaintiff's petition, nor is it anywise shown by the record before us. We must therefore, in considering them, give the term "warrant" its ordinary meaning or signification; for it cannot be presumed that the commissioners' court has been juggling with words to evade the law.

[15] A municipal warrant or order is an instrument generally in the form of a bill of exchange or order drawn by an officer of a municipality upon its treasurer, directing him to pay an amount of money specified to the person named, or his order, or bearer. They are in the ordinary form of commercial paper, but they do not possess the qualities of such paper. They are regarded as orders of the corporation on itself, and, in substance, the mere promise of the municipality to pay the amount specified and they are liable to all the equities existing or attached to the original transaction. Haines on Munic. Securities, §§ 355, 356; Randolph on Commercial Paper, §§ 91, 337, 338; 1 Dill. Mun. Corp. 406.

But the character of negotiability belongs to municipal bonds, which are in form and intention negotiable, and, apart from the question of authority and regularity, a bona fide holder for value, before maturity, is entitled to recover upon it clear of defenses existing against the original holder.

[17] Such bonds are to be regarded in the main as commercial paper, and holders of them are necessary parties to a suit in equity commenced by taxpayers to obtain an injunction against the collection of taxes for their payment. Randolph on Com. Paper, § 336, and authorities cited.

It is not alleged nor claimed by plaintiff that the tax levied to meet the payment of these warrants exceeds the limit of the taxing power for that purpose. His sole ground for restraining the levy and collection of the tax is based upon his assignment of error quoted, and, as we have shown that it does not sustain the contention, the order of the court denying the temporary injunction prayed for is affirmed.