McWILLIAMS et al. v. COMMISSIONERS' COURT OF PECOS COUNTY et al.

(Court of Civil Appeals of Texas. El Paso. Jan. 23, 1913.)

1. APPEAL AND ERROR (§ 1043*)—HARMLESS ERROR—MOTION FOR DISSOLUTION OF INJUNCTION.

The denial of a motion for a postponement of the dissolution of an injunction, made on the sole ground that Rev. Civ. St. 1911, art. 4664, requiring 10 days' notice of a motion to dissolve, gave that technical right, where there was no contention that the moving party was not ready for trial or prejudiced in any matter, was not reversible error, since it did not cause the rendition of an improper judgment under rule 62a (149 S. W. x), providing that reversal shall be for no other cause.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4115–4121; Dec. Dig. § 1043.*]

2. COUNTIES (§ 57*)—COMMISSIONERS' COURT —DISCRETION AS TO BUILDING OF COURTHOUSE—JUDICIAL REVIEW.

The determination of the commissioners' court is conclusive as to the necessity of the repair or building of a new courthouse or jail, in the absence of fraud.

[Ed. Note.—For other cases, see Counties, Cent. Dig. §§ 74, 75; Dec. Dig. § 57.*]

3. INJUNCTION (§ 175*)—HEARINGS—FINAL HEARING—CONTINUANCE OF PRELIMINARY INJUNCTION—FRAUD.

In a proceeding to enjoin the commissioners' court from building a new courthouse, evidence on motion to continue a temporary injunction held not sufficient to warrant a reasonable belief that the actions of the court were founded in fraud.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 388; Dec. Dig. § 175.*]

Appeal from District Court, Pecos County; W. C. Douglas, Judge.

Suit by J. F. McWilliams and others against the Commissioners' Court of Pecos County and J. M. Odom and others, as individual members thereof, to enjoin the building of a new courthouse and jail. From an order dissolving a restraining order, the plaintiffs appeal. Affirmed.

Beall & Beall, of Sweetwater, and R. D. Blaydes, of Ft. Stockton, for appellants. Jackson & Payne, R. D. Wright, Jno. R. Storms, O. W. Williams, and Chas. T. Haltom, all of Ft. Stockton, for appellees.

HIGGINS, J. Appellants bring this suit against the commissioners' court of Pecos county and the individual members thereof, John M. Odom, county judge, Mart Adams, R. W. Mussey, J. M. Holmes, and Tom Cope, commissioners, in substance alleging that plaintiffs were resident, property-owning, and tax-paying citizens of Pecos county; that the county had a first-class, commodious courthouse, built of stone, situate in the town of Ft. Stockton, in all respects ample and sufficient for the needs of the county and the business of the officers and courts of the county; that said courthouse is situate in what is known as the original town of Ft. Stockton; that, since the advent of the Kansas City, Mexico & Orient Railway into the town, there had been established an addition to "the old town," and the addition was known as "the new town"; that there was a spirit of jealousy on the part of the citizens and property owners of the old town towards the new town; that, because of such spirit, the county judge, Odom, and the commissioner, Adams, who were leading business men in the old town, were apprehensive and fearful that, when the new town should have built up and become sufficiently populous, it would make an effort to remove the site of the courthouse and build a new courthouse in the new town, and that, in order to forestall any such action, it was thought necessary and imperative to then take steps to prevent the same, which fears and apprehensions had been discussed by the commissioners' court, resulting in the orders and actions of the court complained of; that said commissioners' court had determined to rebuild the

present courthouse, and had employed an architect to assist the court in the selection and adoption of plans and specifications therefor, and supervise the construction thereof; that at a special term of the court, held on May 30, 1912, an order had been entered, adopting plans and specifications for a new courthouse, subject to revision and correction by their said architect, and at a special term held on June 19, 1912, an order had been entered by the court finally accepting and approving such plans and specifications, and in connection therewith had entered its further order reading as follows: "On this 19th day of June, 1912, it is decided and ordered by the court that it is for the best interest of Pecos county to make certain alterations and additions to the Pecos county courthouse and jail, according to plans and specifications which have been duly adopted; and, further, said alterations and additions shall be made at the cost and expense of said county, the amount of which is to be determined by contract entered into by the contractor for alterations and additions to said building, it being the purpose and intention of the court to pay for said work in valid county scrip or warrants, bearing interest and drawn upon the county treasurer, to be hereafter provided for at a term of this court, to be held on the 15th day of July, 1912." And that, following this last-mentioned order, the court on June 20, 1912, had made its further order to advertise for bids on courthouse and jail, and had further ordered that the court meet on July 15, 1912, for the purpose of receiving bids for alterations and additions to the courthouse and jail, furnishing cells, steelwork for the jail, and for making a tax levy, and for the transaction of any further business that might come before the court; that it was the purpose and intention of the court, at said meeting on July 15, 1912, to receive, approve, and accept one of the bids for such work, and to enter into a contract for the building of a new courthouse and jail, in accordance with such plans and specifications, thereby entailing on Pecos county and the tax-paying citizens thereof the burden of a debt to be incurred thereby; that the effect, purpose, and intent of such plans and specifications is to virtually tear down and destroy the courthouse as it now stands, and, under the fraudulent claim of altering and extending the original building, to use only a small part of the structure and material of same, and to build and erect another courthouse, practically new in all of its parts, and constituting a new structure of wholly different design, architecture, size, and materials, and at an expense of between $75,000 and $80,000; that the courthouse, as it now stood, was large, roomy, commodious, and ample for all county purposes, and evidently would be for many years to come, and was in splendid state of preservation, and the contemplated work was not only an unnecessary improvement, but would be an extravagant waste and destruction of valuable property and expenditure of money, in no sense required or demanded by the needs or purposes of the county; that the orders and purposes of said court, and the several members thereof, were in fraud of plaintiffs' rights and interests, and of the rights and interests of all of the other tax-paying and property-owning citizens of the county, for "that the said John M. Odom, county judge, is a large property owner, and has business interests in said old town, and that he has urged and argued, as plaintiffs are informed, believe, and here aver, that the citizens of said new town would in all probability in the near future adopt a move to remove the courthouse to, or to build a new courthouse in, the new town, and that, in order to prevent same being done, the commissioners' court would have to build a new, large, and expensive courthouse on the old site, and that such should be done before the Kansas City, Mexico & Orient Railway Company got in with its tracks, and the probable increase in the population of the new town should occur; that Mart Adams, Esq., commissioner of commissioners' precinct No. 1 of said county, is a resident citizen of, and is largely interested as a property owner of, the old town, and has business interests therein, including a saloon on a lot adjoining the 'square' facing the courthouse and public square, which lot and house is owned by the said John M. Odom, county judge, and that he, too, as plaintiffs are informed, believe, and here aver, has taken part in said matter, using the same line of argument, insisting upon the importance of early action in building the new courthouse, as urged by the county judge, above alleged; that Tom Cope, Esq., commissioner of precinct No. 4, lives some 15 or 20 miles to the north of Ft. Stockton; and, while plaintiffs have no knowledge of his owning any property in the old town, yet they have been informed, believe, and aver that he has been unduly influenced by the said John M. Odom, county judge, and Commissioner Adams, and that he, too, has favored building the new courthouse now, so as to forestall any such move on the part of the new town; that, as shown by the minutes of said commissioners' court, John M. Odom, county judge, Mart Adams, as commissioner of precinct No. 1, and Tom Cope, commissioner of precinct No. 4, were the only acting members of the court when the order of June 19, 1912, above referred to, was passed by said court, which determined to build the courthouse and jail, and authorized bids for same.

"Plaintiffs believe, and so charge, that whatever sanction or approval of the said R. W. Mussey and J. M. Holmes—the other two members of said court—the said scheme of building the new courthouse and jail is and was superinduced by the other interested members of said court in said scheme, aided by the influential promoters of said scheme,

residents of and property owners in the old town, as hereinbefore alleged; that said facts pertaining to the members of said court, their motives in such move, and the other facts hereinbefore fully alleged as to the sufficiency of the present courthouse, its ample capacity and unimpaired condition, the needlessness and uselessness of further facilities, and the enormous expense incident to such a scheme, together with the evident fact that the members of said court are proceeding with said courthouse work and scheme for the purpose of beautifying and adorning the public square and that part of the old town with a handsome, elegant, and artistic courthouse and jail, thereby enhancing and maintaining the values of their personal properties and interests, and the like interests of those of the old town who are assisting in said scheme, and are thus operating through the agency of the commissioners' court to carry out such personal and individual interests at an enormous expense to Pecos county and the tax-paying citizens thereof; that in such matters the said commissioners' court and the members thereof, instead of faithfully carrying out their legal duties of guarding and protecting the financial interests of Pecos county and its citizens, are, in violation of such solemn duties, resting upon said court and its members to safely protect and guard such county interests, have made all of said orders, which are illegal, and are proceeding with said building scheme as hereinbefore alleged, not for the purpose of providing a suitable courthouse, said county being already provided with such, as hereinbefore shown, but such acts and orders are done solely for the financial benefits of the members of said court making such orders, and those acting with them in their said scheme, to thus defraud plaintiffs and other taxpayers of said Pecos county, thereby going beyond and fearfully abusing the powers and authority vested in such court and officials, and are and will, if not restrained in such unlawful acts, waste and destroy valuable property, and entail upon plaintiffs and other tax-paying citizens of Pecos county a useless, needless, and burdensome debt to be met only through the channel of taxation, to be levied and collected as hereinbefore alleged—all of which is in fraud of the property rights of these plaintiffs and other tax-paying citizens of Pecos county, such as will result in irreparable damages to them, for which they can have no adequate remedy at law." That the jail building originally cost $10,000 or $12,000, was a substantial stone structure, with convenient and serviceable compartments, and that the improvements, changes, and additions thereto, as contemplated by the court, would be a waste of property and a needless and extravagant expense, except as to cells, which could be supplied at a nominal expense and paid for in cash; that the new jail work was instigated and promoted by the same motives and agencies hereinbefore stated with reference to the courthouse work, and was in fraud of plaintiffs' rights for like reasons.

The petition concluded with prayer as follows: "Wherefore, the premises considered, and to the end that the great wrong herein complained of may not, through the fraudulent usurpation of official power as herein alleged, be committed against the plaintiffs and other tax-paying citizens of Pecos county by said commissioners' court, plaintiffs pray that your honor grant to them a gracious writ of injunction, directed to said county judge and county commissioners, individually, and to said commissioners' court, temporarily restraining them, or any of them, from making any further orders, decrees, or contracts in or about, or pertaining to, the tearing down and rebuilding the present courthouse and jail of Pecos county, or any material part of same, or to the altering and extending of either of said buildings, or to the building of a new courthouse or jail for Pecos county, or to accepting and approving any bid or bids of or from any contractor for such work, or to the making of any order or decree authorizing the levy or collection of any county assessment or tax of and for any such purposes, until further orders which your honor, as such district court, may take in this cause; that each of the said defendants be legally cited to appear and answer hereto; and that, upon final hearing hereof, said writ or writs may be perpetuated, and they pray for costs of suit, as well as for general and special relief, and in duty bound will ever pray."

Hon. W. C. Douglass, judge of the Sixty-Third judicial district, in which the county of Pecos is situated, being absent from the district, the foregoing petition, on July 8, 1912, was presented to Hon. S. J. Isaacs of the Seventieth district, who, in chambers, indorsed his fiat thereon, directing the issuance of a temporary writ of injunction as prayed for, commanding the defendants to desist from making any further orders, decrees, or contracts in or about, or pertaining to, the tearing down and rebuilding of the present jail and courthouse of Pecos county, and from accepting any bid or making any contract or levying any tax for such purpose, until the further order of the district court of Pecos county, or of the Hon. W. C. Douglass, judge of the Sixty-Third district. On July 11, 1912, Judge Isaacs instructed the district clerk of Pecos county, in writing, as follows: "In the case of McWilliams et al. v. John M. Odom, county judge, et al, you will amend my temporary restraining order, indorsed on petition, to make same returnable to Judge Douglass, for hearing at Ft. Stockton, on Monday, July 15, 1912. This is necessary for the reason that, at the time of making the said temporary restraining order, I did not know when or where Judge

Douglass could be reached." And, in accordance with such instructions, the clerk amended the fiat upon the petition, so as to make the injunction or restraining order, whichever it may be termed, effective only "until the further order of the district court of Pecos county, or of the Hon. W. C. Douglass, judge of the Sixty-Third judicial district of Texas, at Ft. Stockton, Tex., on July 15, 1912." The injunction bond having been filed, the district clerk of Pecos county, on July 13, 1912, issued an injunction or restraining order, in accordance with the terms of the fiat, making the same effective until the further order of the district court of Pecos county, or the Hon. W. C. Douglass, judge of the Sixty-Third judicial district, on the 15th day of July, 1912, when the writ was made returnable. This writ was served upon each of the defendants on the morning of July 15, 1912, prior to the meeting of the commissioners' court to be held on that date.

Defendants filed their answer, consisting of general demurrer and certain special exceptions not necessary to be considered, and further answered specially, denying that any of their actions were prompted by or founded in fraud, but that their acts and orders, as members of the commissioners' court, had been made after due consideration, and for the purpose of serving the county and the citizens thereof to the best advantage; that, in their deliberations concerning the repairs and additions, they had been influenced by no other motive or interest than the welfare of the county and the citizens thereof; and, after due consideration and investigation, they had decided that it was necessary, and to the best interests of the county, that a better courthouse and jail be built, and, after such consideration and investigation, had found that such results could be obtained by adding to and repairing the present ones by utilizing the walls, foundations, and other portions of said buildings, whereby they would be able to save a large sum of money. They further specially denied the allegations of the sufficiency of the courthouse and jail for the present needs of the county; that there was but one courtroom in the building, and the spring term of the county court conflicted with the term of the district court; that the justice court of precinct No. 1 had no place to hold court when either the county or district court was in session; that there was no suitable grand jury room or petit jury room or witness room in the courthouse; that the county surveyor had no vault in which to keep his records; that the county clerk had neither sufficient office nor vault room; that the tax assessor had not sufficient vault room in which to store his records; that there was not an unoccupied room in the building suitable for the county treasurer, county judge, district attorney, or district judge, in which to office; that the county jail was small, cramped, and unsanitary, and totally inadequate for the needs of the county, and was a fire trap; that there was but one room and one cell in which to keep prisoners, necessitating whites, Mexicans, and negroes being kept together, and there was no place whatever to keep women prisoners, lunatics, or minors. Other matters of special defense, as well as supplementary pleadings of the plaintiffs and defendants, it is unnecessary to state.

On July 15, 1912, the case being called for hearing by Judge Douglass, plaintiffs presented a motion, which reads as follows: "Comes now the plaintiffs in the above-styled and numbered cause, and show to the court that they presented their application in this cause for temporary writ of injunction to Judge Isaacs, of the Seventieth judicial district of Texas on the 8th day of July, 1912, which petition was by said court on said day granted, and the writ of injunction, as therein prayed for, was ordered by the fiat of said judge, restraining the commissioners' court of Pecos county from making contemplated orders to be by it made on this the 15th day of July; that thereafter, to wit, July 11, 1912, the said Judge Isaacs made a further order in said cause, directing the clerk of this court to indorse upon said petition and his said former fiat, making said petition and writ returnable to Judge Douglass at Ft. Stockton on this the 15th day of July, 1912, authorizing notices to plaintiffs of said date, July 15th, for said hearing. Plaintiffs show to the court that the second order or amendatory order so made by said Isaacs was without authority of law, and the notice thereby authorized to the plaintiffs that said cause should be set down for hearing on this the 15th day of July was unauthorized by law, wherefore plaintiffs move and pray the court that they be not held or required to answer the answer and motion of the defendants in this cause to dismiss and dissolve said injunction, which was not filed until on this the 15th day of July, 1912, until the expiration of 10 days from the service of such notice and the filing of the answer by the defendants, as hereinabove stated, as required by statute, art. 3007, which guarantees plaintiffs 10 days' notice of such motion and answers by defendants, as filed in this cause, and that this honorable court designate such date for the hearing of said answer and motion so filed by defendants herein." This motion was overruled, and the cause proceeded to hearing and continued from the 15th until the 19th day of July, when Judge Douglass entered his order refusing the temporary writ of injunction prayed for by plaintiffs, and dissolved the injunction or restraining order granted by Judge Isaacs on July 8th, from which order appeal to this court was taken.

The first assignment complains of the action of the court in requiring plaintiffs to proceed with the hearing on July 15th; that

the order made by Judge Isaacs by his fiat, indorsed on the petition on July 8th, was a temporary injunction, which would remain in force until a final hearing, and could only be dissolved upon the coming in of an answer and after 10 days' notice of motion to dissolve, in accordance with the provisions of article 4664 (formerly 3007), Revised Statutes; that, when Judge Isaacs had once made his order, further control thereof passed from him, and the subsequent order made by him, directing the clerk to amend his fiat, limiting the effectiveness of the original order until July 15th, and making the writ returnable on that date, was unauthorized; that, a temporary writ of injunction having been granted, Judge Douglass could not proceed to a dissolution of the same until the 10 days' notice required by article 4664 had been given. Appellees contend that the order of Judge Isaacs was not a temporary injunction, intended to operate, and which did operate, until the final hearing, but was a restraining order, interlocutory in its nature, and effective only pending the hearing of the application for the temporary writ.

[1] The distinction between these two species of injunctions is clearly stated by Judge Gaines in Riggins v. Thompson, 96 Tex. 154, 71 S. W. 14; and, if it was a mere restraining order, there can be no question of the correctness of the court's action. It is unnecessary for this court, however, to determine whether or not it was of this character. If it be true that it was an injunction, effective until final hearing, the trial court, of course, erred in dissolving the same without giving appellants the 10 days' notice of the motion to dissolve, as required by article 4664; but, under the facts here disclosed, such error, if any, was not reversible. The motion for the 10 days' postponement, it will be noted, was not based upon any contention that appellants were in any wise unprepared for the hearing, or that it would be harmful to them to forthwith proceed, but was based upon an asserted legal and technical right to 10 days' notice. It is not contended in the motion, nor here, that they were deprived of any substantial right whatever by being required to proceed with the hearing on July 15th. Their attorneys were all present at the hearing, numerous witnesses were called and examined by them, and no pretense made that the action of the court, in requiring them to proceed, deprived them of the testimony of any witness, or of any other matter essential to their case. The action of the court, therefore, if it was a denial of any of the rights of the appellants, in our opinion, was not reasonably calculated to cause, and probably did not cause, the rendition of an improper judgment. Rule 62a (149 S. W. x) Courts of Civil Appeals. We therefore hold that the action of the court, in proceeding with the hearing on July 15th, if erroneous, presents no reversible error. It is unneces-

sary to determine, and we do not determine, whether or not such action was erroneous.

[2] Passing now to a consideration of the correctness of the court's action in refusing to stay the commissioners' court from performing the acts complained of, pending a final hearing of the matters in controversy, it is clear that it was the intention of the law to leave to the discretion and judgment of the commissioners' court to determine when the necessities of a county require the building or repairing of courthouses and jails, and their decisions, upon these questions, are final, and are not to be reviewed by any other court. Robertson v. Breedlove, 61 Tex. 321; Cresswell, etc., v. Roberts County, 27 S. W. 737; Stratton v. Kinney County, 137 S. W. 1170. It appears from an inspection of the petition in this case, that the plaintiffs are seeking to substitute their judgment, as to the necessity for the contemplated enlargement and additions to the Pecos county courthouse and jail, for that of the commissioners' court of the county; and, under the cases cited, it is incompetent for them to do so. While this is true, yet it is also true that an order or contemplated act by a commissioners' court, originating in and based upon fraud, may be enjoined by the courts; and it is contended that the testimony adduced upon the hearing discloses that the improvements contemplated by the Pecos county commissioners' court would be an extravagant expense, made in the interest of themselves or a limited community, which would be legal fraud. No such condition, however, is disclosed by the record. We will not review the evidence, as it is quite lengthy; but it is sufficient to say that it wholly fails to establish any such contention. Upon the contrary, the testimony clearly and indisputably discloses that the present courthouse and jail of the county are both inadequate, and there is nothing to show that, in enlarging and improving the same to the extent contemplated, the court is exceeding in any manner the authority vested in them by law. It is their duty to provide not only for present needs, but to look into the future, and to make reasonable provision for the probable future necessities of the county.

[3] But it is argued that, if fraud was not affirmatively shown on the preliminary hearing, the injunction should nevertheless have been granted pending final hearing. If it appears that fraud probably exists in a case of this kind, it is, of course, apparent, if the facts are sufficient to warrant a reasonable belief that the actions and orders of the court were founded in fraud, a preliminary injunction should issue, otherwise, pending a final hearing, irreparable injury would have been done. However, the testimony here does not indicate the probable existence of fraud, but simply presents a case where certain citizens are trying to substitute their judgment for the judgment and discretion of

the commissioners' court, in the determination of a question which it is the right and duty of the commissioners' court to determine for itself.

We have examined all of the assignments of error appearing in the transcript, whether presented in the briefs or not, and, finding no error, the judgment of the lower court is affirmed.

McKENZIE, J., disqualified, and not sitting.